IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CASE No. 2:19-CR-103 |
| v. | : | |
| | : | |
| CRAIG M. SCHABER | : | JUDGE EDMUND A. SARGUS |
| | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through undersigned counsel, hereby submits its Sentencing Memorandum in response to the sentencing memorandum of the defendant, Craig M. Schaber. The defendant is to be sentenced for his attempt to pay a purported mother of two minor daughters to engage in various sexual activities with her fictitious minor children. Because of the aggravated nature of his offense conduct, as well as his history of sexually abusing minor girls, a sentence well above the 15-year mandatory minimum is warranted.

### BACKGROUND

On April 25, 2019, the defendant pled guilty to a one-count Information that charged him with attempted sex trafficking of minors, in violation of 18 U.S.C. §§ 1591 and 1594. The plea was entered pursuant to plea agreement, which contained, as an attachment thereto, an agreed factual statement of the offense conduct in support of the defendant's guilty plea. That statement detailed the defendant's solicitation of an undercover officer for access to the officer's fictitious three and ten year old daughters for purposes of sexual activity. After meeting with the undercover officer so that they could be sure they trusted each other, the defendant offered to pay the officer $200 to engage in sexual intercourse with the fictitious ten-year-old child. The defendant further offered the officer a new cell phone and living with the defendant rent-free in

exchange for additional sexual activity with both minor girls.

The final Presentence Investigation Report ("PSR") was disclosed by the Probation Office on July 25, 2019, and sentencing in this matter is scheduled for October 17, 2019. The defendant filed a Sentencing Memorandum on October 7, 2019.

## PRESENTENCE INVESTIGATION REPORT AND RECOMMENDATION

As calculated in the PSR, the advisory sentencing guideline "range" for the defendant's offense is life, based on a total offense level of 43 and a criminal history category I. As discussed in greater detail below, the defendant has raised several objections to the guideline calculation contained in the PSR. The government concurs with one of these objections and recommends that the defendant's advisory sentencing guideline range should be 292 to 365 months, based on a total offense level of 40 and a criminal history category I.

The Probation Officer has indicated that a departure from the applicable guideline range may be warranted under U.S.S.G. § 5K2.0(a)(1)(B), if the Court finds that there is an aggravating circumstance that is not adequately taken into consideration by the guidelines. The Probation Officer has further identified the serious nature of the defendant's offense conduct and his difficult childhood as potential bases for deviation from the sentence recommended by the guidelines. The sentence ultimately recommended by the Probation Officer is a lifetime incarceration term followed by a lifetime term of supervised release.

## SENTENCING FRAMEWORK AND GUIDELINE CALCULATION

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a three-step sentencing procedure. Courts are first to determine the applicable guideline range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range, along with all of the factors listed in 18 U.S.C. § 3553(a), to

determine what sentence to impose. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Section 3553(a) further delineates seven factors the Court must consider in fashioning an appropriate sentence: (1) the nature and circumstances of the offense/history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges as set forth in the Sentencing Guidelines; (5) Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.

## ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

I. *Guideline Calculation and Possible Departure*

As indicated above, the defendant has raised several objections to the Probation Officer's calculation of the advisory guidelines. The defendant first generally claims that the Court should use only the base offense level of 34, without consideration of any specific offense characteristics, because that is what the parties agreed to in the plea agreement. The defendant's position is incorrect. The plea agreement specifically delineates the parties' agreement that a two-level increase in offense level is applicable pursuant to U.S.S.G. § 2G1.3(b)(3)(A). Furthermore, the plea agreement clearly put the defendant on notice of the potential application of U.S.S.G. §§ 2G1.3(d) and 4B1.5(b), stating that the probation officer may find these provisions applicable and the government may concur with such finding. *See* Doc. # 21, Plea Agreement at ¶¶ 7(b) and (c). In regards to the application of the 8-level increase pursuant to § 2G1.3(b)(5), the government concurs that this enhancement was incorrectly applied.

The defendant more specifically objects to the Probation Officer's finding under U.S.S.G. § 4B1.5(b) that he is a repeat and dangerous sex offender, arguing that the basis for this enhancement – allegations that the defendant previously molested four minor girls – have not been established by a preponderance of the evidence. He points to the defendant's own statements during the ▮ investigation of these offenses and ▮ County Children's Services findings as support for his position.

As is fully detailed in the government's letter to the Probation Officer in response to the defendant's objection letter, the evidence that was submitted to the Probation Officer, which will be supplemented at the sentencing hearing, is more than sufficient to establish by a preponderance of the evidence that the defendant engaged in prohibited sexual conduct with a minor on two or more occasions. Specifically, four different minor girls have alleged that the defendant fondled them in some manner in ▮, when the girls were approximately ▮ years of age or younger. The allegations of two of these girls specifically indicated that the defendant touched their genitalia or breasts under their clothing, while they were sleeping in the bed of the ▮. One of these children passed a polygraph regarding her allegations, while the other child's polygraph examination resulted in an inconclusive finding. The defendant refused to take a polygraph. Both of the allegations were found credible by the investigating children's services agency.[1] These two allegations, which involve conduct that meets the definition of prohibited sexual conduct under § 4B1.5(b), are sufficient to warrant the five-level enhancement. That there were two additional minor girls who made very similar

---

[1] In his objection letter to the Probation Officer, the defendant makes a rather hyper-technical argument that ▮ County Children's Services' (▮) finding that the allegations of the two victims were "indicated" rather than "substantiated" suggests that the abuse may not have occurred. Review of ▮' full report of these investigations reveals that the agency actually used these words interchangeably, and that, whatever label they attached to it, they found the allegations to be credible.

allegations, while not necessary to establish the applicability of the enhancement, both provides an alternative basis for application of the enhancement and strengthens the credibility of the allegations of the two initial victims. The allegations provide a sufficient factual basis to apply § 4B1.5(b).

The defendant's argument that the enhancement unfairly considers conduct for which he was not charged also misses the mark. The Sixth Circuit has repeatedly held that uncharged and even acquitted conduct may properly form the basis for enhancements under the advisory guidelines. *See United States v. Wandahsega*, 924 F.3d 868, 886-888 (6th Cir. 2019) (upholding application of § 4B1.5(b) despite defendant's acquittal on offense conduct supporting enhancement, because "controlling caselaw explicitly allows sentencing courts to consider such acquitted conduct"); *United States v. Pirosko*, 787 F.3d 358, 373-374 (6th Cir. 2015) (upholding guideline enhancement based on sexual abuse for which defendant had never been charged or convicted); *United States v. Paull*, 551 F.3d 516, 527 (6th Cir. 2009) (same); *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) ("So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range.") The applicable guideline here makes the propriety of considering uncharged conduct explicit: "[a]n occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion . . . resulted in a conviction for the conduct that occurred on that occasion." U.S.S.G. § 4B1.5, Application Note 4(B). The enhancement under § 4B1.5(b) is properly applied, and the defendant's total offense level, including reductions for acceptance of responsibility, should be 40. The government does not believe that there are any bases under the guidelines for departure

from the range resulting from these calculations.

II.     *Section 3553(a) Factors*

In his Sentencing Memorandum, the defendant urges the Court to consider various factors, including his acceptance of responsibility, the lack or "real" victims, his lack of prior criminal convictions, and his history of gainful employment, as bases for imposing a more lenient sentence.  The government submits that the following § 3553(a) factors are of greatest significance in this case, and warrant a sentence well above the statutory mandatory minimum.

<u>Nature and Circumstances of the Offense</u>

Given the 15-year mandatory minimum applicable to the defendant's offense of conviction, it is clear that Congress views the act of sex trafficking of minors to be a serious crime.  The defendant's particular actions in this case support Congress' perception and clearly illustrate the danger and degradation to the most vulnerable members of our society that offenses of this nature pose.

The defendant sought to purchase sexual intercourse with ten and three year old children.  That is the nature of the offense in this case, and it is not only a serious criminal act, it is morally reprehensible and utterly incomprehensible to any person having an ounce of human decency.  But for this defendant, it was his ultimate goal.  In his opening salvo to the undercover officer, without any prompting beyond the question of what taboo things the defendant was interested in, the defendant stated, "I like young girls," and went on to explain in disgusting detail the sexual acts he wanted to engage in with a child.  When asked what his preferred age range was, his response was "7 to 15."  And when the undercover tried to persuade the defendant that ten and three year old children were too young to engage in intercourse, the defendant claimed that he had previously penetrated a nine-year-old child and offered "200 dollars cash" to be allowed to

penetrate the undercover's older child. Also not agreeable to the undercover's hesitancy to allow the three-year-old child to engage in sex acts, the defendant urged that he "at least try right….it won't hurt her I promise you…if anything it will make her feel good…3 years old would be a first for me I bet she would be amazing." In a further attempt to induce the undercover to permit him to rape the three-year-old, the defendant offered to sign over his residence and financial accounts in exchange for being able to penetrate the child, and agreed to limit such abuse to once a month.

In his argument for a more lenient sentence, the defendant urges the Court to consider the fact that the children involved in his offense were fictitious. This fortuitous circumstance is hardly to the defendant's credit, when weighed against his clear and unequivocal quest to rape a young girl, including one he believed to be three years old. Further refuting any significance of the fictitious nature of the victims in this particular case is the defendant's history that involves four allegations of sexual abuse of real girls who have been significantly damaged by the defendant's actions. His conduct reveals him to be a dangerous predator, and that conduct calls for a sentence well above the mandatory minimum.

<u>History and Characteristics of the Defendant</u>

The defendant has a supportive family, as evidenced by the letters that they have submitted on his behalf, and a positive employment history. He faced some difficulties in his early childhood years due to the abusive tendencies of his father. He also has been the subject of at least four allegations of child sexual abuse in the past, two of which were substantiated by the local children's services agencies, and has rather unusual personal interests, as evidenced by the collection of blood-covered mannequins found in his bedroom during the execution of the search warrant. The competing aspects of the defendant's history and characteristics, when weighed

against the serious nature of his offense conduct, do not warrant significant leniency.

That defendants charged with child exploitation offenses frequently have backgrounds involving mental health issues and their own victimization is undoubtedly not an issue that is unknown to this Court. That the Court can and should consider such issues is not disputed by the government. But, in this case, any abuse or bullying that the defendant may have suffered as a child is overshadowed by his continual sexual predation on young, vulnerable girls. This aspect of his history indicates two important things in determining an appropriate sentence: 1) that the defendant had every intention of following through with the sexual abuse he discussed with the undercover officer in this case; and 2) that the defendant has an ongoing and deeply rooted sexual interest in minor girls that makes him a significant danger to the community. As discussed further below, that dangerousness calls for a lengthy term of incarceration above the mandatory minimum.

Statutory Purposes of Sentencing Pursuant to 18 U.S.C. § 3553(a)(2)

In fashioning a sentence that is "sufficient, but not greater than necessary," the Court is directed in 18 U.S.C. § 3553(a)(2) to consider the need for the sentence to:

> (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

All of these factors call for a sentence above the statutory mandatory minimum. As discussed above, the seriousness of the defendant's offense of conviction is evidenced by the lengthy mandatory minimum proscribed by Congress. This defendant's particular actions, which involved very young children, are an exacerbated form of what is a serious crime under any circumstances. As his conduct is far from the least egregious manner in which the crime can be

8

committed, imposing the lowest possible sentence would not reflect the seriousness of the defendant's crime, nor would it mete out punishment equal to that crime. A more significant sentence is necessary to ensure that the defendant comprehends how serious his actions were and to appropriately – and severely – punish him for his egregious conduct.

The serious nature of the defendant's offense also indicates that he poses a very real danger to the most vulnerable members of society. That the defendant could conceive of three and ten-year-old children in a sexual manner makes him unquestionably dangerous. The prior allegations of sexual abuse against the defendant further evidences the danger he poses to any young girls to whom he may gain access. Given this heightened danger, it is of the utmost importance to impose a sentence that will incapacitate the defendant – thereby preventing his access to such vulnerable young victims – for a lengthy period of time. The lengthy period of supervised release recommended by the Probation Officer will also hopefully provide an additional measure of protection of the public by deterring future similar actions once the defendant is released. The defendant's history further indicates that deterrence is a particularly important consideration in this case.

Finally, in light of the nature of the defendant's offense, the government suggests that sex offender treatment is also an important aspect of deterring future criminal activity by the defendant. There are a number of Bureau of Prison ("BOP") institutions that provide Non-Residential Sex Offender Management (SOMP-NR) or Residential Sex Offender Treatment (SOTP-R) programs, and the government suggests that the Court recommend to the BOP that the defendant be designated to one of the following facilities where such programs are offered:

- FMC Devens, MA (SOTP-R and SOMP-NR);
- USP Marion, IL (SOTP-R and SOMP-NR);
- FMC Carswell, TX (SOMP-NR) (female population only;
- USP Tucson (SOMP-NR);

- FCI Marianna, FL (SOMP-NR);
- FCI Petersburg, VA (SOMP-NR);
- FCI Seagoville, TX (SOMP-NR);
- FCI Englewood, CO (SOMP-NR);and
- FCI Elkton, OH (SOMP-NR).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the United States respectfully submits that the aggravated nature of the defendant's offenses calls for a sentence well above the mandatory minimum. The United States further concurs with the Probation Officer's recommended life-time term of supervised release.

Respectfully submitted,

BENJAMIN C. GLASSMAN
United States Attorney

s/*Heather A. Hill*
HEATHER A. HILL (6291633)
Assistant U.S. Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614)469-5715
Fax: (614)469-5653
Heather.Hill@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served via electronically this 9th day of October, 2019, upon J.C Ratliff, counsel for the defendant.

s/*Heather A. Hill*
HEATHER A. HILL (6291633)
Assistant United States Attorney